IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

SHERRY LYNN STONER            )        CASE NO. 4: 13-CV-00312-REL-TJS
                             )
                             )
PLAINTIFF,                    )
                             )        REPORT AND RECOMMENDATION
VS.                           )
                             )
CAROLYN COLVIN,               )
ACTING COMMISSIONER           )
OF SOCIAL SECURITY,           )
                             )
DEFENDANT.                    )
_____

This case has been referred to the undersigned U.S. Magistrate Judge, Recall

Status, for purposes of Report and Recommendation pursuant to 28 U.S.C. 636(a)(1) on

Plaintiff Sherry Lynn Stoner's Complaint (Clerk's No. 1), seeking reversal of the

Commissioner's decision denying her application for Supplemental Security Benefits under

Title XVI of the Social Security Act, 42 U.S.C. 1381, et seq.

This Court's review of the Commissioner's final decision, including this

Report and Recommendation, is done pursuant to 42. U.S.C. 405(g), 1383(c)(3).

1.

# I. PROCEDURAL AND FACTUAL BACKGROUND

Stoner protectively filed an application for disability insurance on June 18, 2010.

in which she alleged she became disabled on August 13, 2007. That claim was initially denied

on September 29, 2010 was again denied upon reconsideration on December 16, 2010.

On December 29, 2010, Stoner filed a written request for hearing on her claims.

That request was granted and the Administrative Law Judge (ALJ), Eric S. Basse

conducted a hearing on March 21, 2012 . Stoner appeared with her lawyer Steven Jayne.

At that hearing Holt testified on her own behalf, as did the impartial vocational expert (VE),

Roger F. Marquardt.

On May 17, 2012, ALJ Basse denied Stoner's application for supplemental

social security income. Thereafter, she asked the Appeals Council to review that decision

denying her claim. The Appeals Council denied her request for review on May 20, 2013.

Stoner filed her complaint in this Court on July 17, 2013, pursuant to 42 U.S.C. 405(g) and

1383(c)(3).

Stoner was born on June 30, 1962; she was 45 years old on the date of the alleged

onset of disability, and was defined at that time as a younger individual age 18-49.

## II. FINDINGS OF THE COMMISSIONER

In the decision filed May 17, 2012, the ALJ found, int*er alia:*

1. Stoner met the insured status requirements of the Social Security Act through December 31, 2013.

2. Stoner had not engaged in substantial gainful activitiy since August 13, 2007, the date of her alleged onset of disabilities. 20 CFR 404 1571 et seq.

3. Stoner suffers from severe impairments: status-post right ulnar transposition; status-post left arthroscopic decompression with debridement of the rotator cuff; and plantar fasciitis. 20 CFR 404.1520. The impairments were established to be "severe" because they cause significant limitations upon Stoner's ability to perform basic work activities. However, her determinable mental adjustment disorder with depressed mood was determined not to cause more than minimal limitation in her ability to perform basic mental work activities, and was found to be non severe. This finding was made in accordance with Section 12.00C of the Listing of Impairments, 20 CFR Part 404. Subpart P, Appendix 1, (paragraph B criteria).

The record established that Stoner's limitations were as follows: no restrictions in daily living activities; no difficulties in social functioning; no difficulties in concentration, persistence or pace; and no episodes of decompensation for extended periods.

Stoner's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas, and because she has had no episodes of decompensation of extended duration, her determinable mental impairment is non severe.

4. Stoner does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404. Subpart P, Appendix 1. The ALJ considered all of Stoner's impairments individually, and in combination, but found no evidence that the combined clinical findings regarding those impairments were at the level of severity contemplated in the Listings. As a result, the ALJ determined that disability could not be determined on the medical facts of her claim alone.

5. Stoner was found to have the residual functional capacity to perform light work defined in 20 CFR 404.1567(b), with the exception that she could only crawl occasionally and cannot climb ladders, ropes or scaffolds. She was found to be right hand dominant; could not perform tasks requiring her to reach over shoulder level with her left upper extremity, but she could reach below shoulder level with her left upper extremity; and she is limited to lifting no more than two pounds with the upper extremity and only occasionally reaching in any direction with the left upper extremity.

In making these findings the ALJ relied on the requirements found in 20 CFR 404.1529 and SSRs 96-4p and 96-7p and considered the opinion evidence presented as provided for in 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. In addition, the ALJ followed a two-step process which first required determination that there is an underlying medically

determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms. If such physical or mental impairments are established, then the ALJ evaluated the intensity, persistence and limiting effects of those symptoms to determine the extent to which they limited Stoner's functioning. In the second step, if Stoner's claims or statements about intensity, persistence or functionally limiting effects of pain or other symptoms were not substantiated by objective medical evidence, the ALJ was required to make a finding on credibility of Stoner's statements relying on the entire case record in accordance with 20 CFR 404.1529 and 416.929.

The allegations made by Stoner as to her disability included claims of left shoulder injury and pain; right hand and thumb injury; right cubital tunnel release; and left plantar fasciitis. She also claimed that she was not capable of lifting or holding objects and that she required assistance with dressing and grooming. In 1999 she sustained injuries to her right thumb metacarpal joint, right CMC joint and wrist, resulting in entrapment neuropathy involving radial and median nerves. A 2002 medical evaluation by a neurosurgeon indicated that Stoner's use of her right hand in "competitive" employment was guarded in light of the fact she was right-hand dominant. That evaluation also stated that she was capable of lifting five pounds occasionally with her right upper extremity and occasionally gripping to about 15 pounds of pressure. In the context of that evaluation, the ALJ noted that Stoner subsequently returned to work as a nurse aid and she reported improved right upper extremity grip strength in 2008.

That report was in the context of 2007 surgery involving left arthroscopic shoulder decompression with rotator cuff debridement, after which she was released to return to work in January 2008, with no overhead lifting, which was followed by release to return to work without any restrictions in May 2008. The return to work was authorized by the treating physician who found Stoner had reached maximum medical improvement, and who noted that she declined further treatment.

With respect to Stoner's complaints about left foot and heel pain which had been diagnosed as plantar fasciitis, she participated in physical therapy in August 2008, but reported that she had not been wearing any type of shoe insert; that she was having difficulty "keeping up" with her six-year old granddaughter who she was raising; and that she was "doing a lot of walking and shopping". She also reported that "she liked to go barefoot" which raised questions with a physical therapist who was "unsure" if Stoner was compliant with shoe wear at all times when she was on her feet. Notwithstanding these concerns, Stoner reported in November 2008, that she had a "75 percent" improvement with a power step orthotic.

During an October 30, 2008 independent medical evaluation, requested by Stoner's representative, she reported that she had experienced worsening pain in her left shoulder with the performance of household chores including lifting pots and pans while cooking. Examination during that evaluation found that Stoner was 5 feet 4inches tall; weighed 198 pounds; had normal motor examination of the left shoulder with some tenderness but no loss of muscle strength; no scapular winging of the left upper extremity; normal deep tendon reflexes of the

left upper extremity; left shoulder abduction limited to 90 degrees; normal left shoulder adduction; left shoulder flexion limited to 170 degrees; left should extension carried out to 20 degrees; and normal left shoulder internal and external rotation.

The independent examining physician was of the opinion that Stoner was capable of lifting 20 pounds occasionally and 10 pounds frequently with all lifting in close proximity to the trunk of the body; and no lifting greater than 5 pounds above the level of the chest; and that "tool use or equipment operation" should be performed below the level of the chest with no forceful, repetitive gripping with the left hand.

It was not until March 17, 2009, that Stoner sought more treatment when she reported progressive left shoulder pain and weakness, which required arthroscopic debridement on June 22, 2009, after which she was referred to physical therapy, which lasted from June 29, 2009 through August 10, 2009. On August 5, 2009, rated her left upper extremity pain at "2" when at rest, and "5" with motion. This was based on a scale of 1 to 10, with 1 being the least amount of pain, and 10 being the highest amount of pain. On August 6, 2009, the therapist indicated improved shoulder range of motion and strength with tolerance to resistance training after Stoner reported her pain level at "1" when at rest. The therapist also reported Stoner had "progressed" during her two weeks of therapy particularly with respect to range of motion and strength.

On August 25, 2009 a Functional Capacity Evaluation was performed by the therapist

which demonstrated a capacity for lifting 10 to 12 pounds with no restrictions as to sitting, walking, or use of the right upper extremity. Additionally, an arthrogram performed in April 2010 was normal showing the rotator cuff intact, notwithstanding Stoner's claims of left shoulder pain. She did not continue treatment with the doctor who performed that arthrogram.

Another evaluation of claimant was performed at the request of the Disability Determination Services on September 7, 2010, and which revealed that: Stoner reported a "remote" history of right wrist surgery, but she did not specify ongoing symptoms; she did not report specific left foot problems related to her plantar fasciitis history; she reported occasional right elbow pain, but did not take pain medication; no neurological deficits were found on exam; she was capable of getting on and off the examination table without difficulty, heel and toe walking and squatting without difficulty, although slow gait was observed due to plantar fasciitis; Phalen's and Tinel's tests were negative bilaterally in the median and ulnar nerve distributions; tenderness in right epicondyle; range of motion form indicated no limitation in any joint, notwithstanding Stoner's narrative report of decreased range of motion in the left shoulder; the examining physician gave the opinion that: Stoner was capable of lifting 20 pounds occasionally from floor to waist and 10 pounds occasionally waist to shoulder, never performing over the shoulder lifting, carrying, pushing or pulling; rarely standing and walking due to plantar fasciitis; never crawling, climbing ladders, walking on uneven surfaces, or negotiating stairs due to plantar fasciitis; rarely gripping or grasping at or below shoulder height

due to left shoulder and right wrist and elbow pain; and no restrictions with respect to sitting, stooping or bending. It was also recommended by that physician that Stoner not wear boots, work in warm or cold temperatures, or use vibratory or power tools.

On November 16, 2010, the Disability Determination Services requested that Stoner undergo a psychological evaluation and examination. The examining psychologist found Stoner appeared to meet minimal criteria for a diagnosis of chronic adjustment disorder with depressed mood. Her Global Assessment of Functioning (GAF) was 62. That psychologist was of the opinion that Stoner was capable of performing a wide range of simple unskilled and semi-skilled work, and appeared to have adequate social sills to appropriately handle interactions with co-workers, supervisors and the public.

While the ALJ found that some of Stoner's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms", her statements concerning the intensity, persistence and limiting effects of those symptoms were not fully credible. In support of that finding he cited to several inconsistencies:

> The September 2010 examination indicated slow gait allegedly due to plantar fasciitis, but other medical evidence in the record reflected no follow-up with a podiatrist since 2008. She reported no standing or walking problems during a functional capacity assessment in August 2009, and did not obtain further orthopedic treatment after April 16, 2010, which suggested that her

symptoms might not have been as limiting as alleged. Her reports of her daily

living activities, either in testimony or other reports, she reported preparing

meals with assistance, loading the dishwasher, helping her son move, caring

for her granddaughter, shopping and driving her car. Her activities are not

as limited as would be expected in the context of her complaints of disabling

symptoms and limitations. Stoner admitted to certain abilities that provide

support for part of the residual functional capacity findings here. There was

no evidence Stoner did not have access to free or low cost medical services

in accordance with Social Security Ruling 96-7p.

Pursuant to Social Security Ruling 96-2p, great weight was accorded to the opinion

of the examining psychologist because it is well supported by clinical findings and consistent

with other substantial medical and non-medical evidence in the record, specifically Stoner's

daily living activities. A 2002 opinion by Robert A. Jones, M.D. regarding Stoner's guarded

ability to use her right hand was given little weight because it was not consistent with the

fact that she returned to work as a nurse aid after that opinion was given, and because in

in 2008, she was reporting improved right upper extremity grip strength. Likewise

a 2010 evaluation by Robin L. Epp, M.D. is given some weight because a portion of the

restrictions have been incorporated into the residual functional capacity conclusion; however

the limitation arising out of the plantar fasciitis were given no weight because they are

inconsistent with the fact that Stoner has not sought current treatment.

Further, Stoner's restrictions with respect to the right upper extremity are given no weight because they are inconsistent with other medical and non-medical evidence in the record, and, again, because Stoner returned to work as a nurse aid and she reported, as noted above, improved upper grip strength in 2008.

Some weight was given to the opinion of the physical therapist who performed the Functional Capacity Evaluation in 2009, regarding no restrictions on sitting, walking or using the right upper extremity which are all well supported and consistent with other evidence in the record. Because the lifting restriction limited at 10 to 12 pounds is inconsistent with objective findings from physical examinations, it is given little weight.

6. Stoner is unable to perform any past relevant work. That conclusion is supported by the testimony from the independent vocational expert.

7. Stoner was born June 30, 1962, and was 45 years old, which is defined as a younger individual, age 18-49, on the date of her alleged disability.

8. Stoner has a high school education and is able to communicate in English.

9.Transferability of job skills is not material to this determination of disability because using the Medical-Vocational Rules supports a finding that Stoner is "not disabled", regardless of whether she has transferable job skills.

11.

10. There are jobs that exist in significant numbers in the national economy that Stoner can perform taking into consideration her age, education, work experience and residual functional capacity. The vocational expert testified that given Stoner's qualifications and factors of the case, she would be able to perform the requirements of representative occupations such as cashier II, unskilled; ticket seller, unskilled; and sales attendant, unskilled, all of which occupations have positions available in Iowa and nationally.

## III. STANDARD OF REVIEW

A district court "will affirm the ALJ's findings if supported by substantial evidence on the record as a whole". Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011) (quoting Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009)). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" Renstrom v. Astrue, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting Moore v. Astrue, 572 F.3d 520, 522 (8th Cir. 2009)). A court must look at "evidence that supports and detracts from the ALJ's decision," but '"[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" Cuthrell v. Astrue, 702 F.3d 1114, 1116 (8th Cir. 2013) (quoting Perkins, 648 F.3d at 897). "Even if substantial evidence supports a contrary outcome, [a court] may not reverse so long as the Commissioner's decision is also supported by substantial evidence." Randolph v. Barnhart, 386 F.3d 835, 839

(8th Cir. 2004) (citing <u>Sultan v. Barnhart,</u> 368 F.3d 857, 863 (8th Cir. 2004)).

> A court will not disturb denial of benefits as long as the ALJ's decision
> falls within the available zone of choices. An ALJ's decision is not
> outside the zone of choice simply because [the court] might have reached
> a different conclusion had [it] been the initial finder of fact.

<u>Buckner v. Astrue,</u> 646 F.3d 549, 556 (8th Cir. 2011) (quoting <u>Bradley v. Astrue,</u> 528 F. 3d

1113, 1115 (8th. Cir. 2008)).

The Eighth Circuit Court of Appeals has filed recent decisions, which in part have

bearing on the issues present in this case.

In <u>Blackburn v. Colvin,</u> 761F.3d 853, 858, the Court stated, *inter alia, that*

> " Substantial evidence is less than a preponderance of the evidence, <u>Teague v.Astrue,</u>
> 638 F.3d 611, 614 (8th Cir. 2011), but is "such relevant evidence as a reasonable mind
> would find adequate to support the Commissioner's conclusion," <u>Davis v. Apfel,</u>
> 239 F.3d 962, 966 (8th Cir. 2001). We may not reverse merely because we would
> have decided differently, or because substantial evidence supports a contrary out-
> come.<u>Id.</u>

A treating physician's opinion is given controlling weight if it is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

other substantial evidence. <u>Whitman v.Colvin,</u> WL 3896131, quoting <u>Goff v. Barnhart,</u> 421 F.3d

785, 790 (8th Cir. 2005). In considering how muchweight to give a treating physician's opinion,

an ALJ must also consider the length of thetreatment relationship and the frequency of

examinations. <u>Casey v.Astrue,</u> 503 F.3d 687, 692(8th Cir. 2007).

The Court will defer to the ALJ's credibility findings, if they are supported by adequate reasons and substantial evidence. Turpin v. Colvin, 750 F.3d 989, 993(8th Cir. 2014).

## IV. DISCUSSION

There are stark issues that must be noted at the outset of this portion of this Report and Recommendation. First, the briefing filed in this case on behalf of claimant was excessive and repetitive. Much of that briefing embodied exactly what claimant complained of in respect to the ALJ's decision: "cherry picking". Notwithstanding nearly 56 pages of initial briefing and reply briefing, not once did claimant cite to the Court any evidence by any physician, medical consultant or evaluator that Stoner was disabled and unable to work at any gainful employment.

There is argument that the ALJ's examination of the vocational expert during the hearing regarding the posing of a hypothetical question was not a fair reflection of Stoner's work abilities. However, the transcript is devoid of any objection by Stoner's counsel to that hypothetical, and there is no cross examination of that vocational expert by Stoner's lawyer on those very issues.

It appears quite strongly that Stoner's primary argument on appeal of the ALJ's decision is that he failed, at Step Two, of the Five Step Sequential Evaluation Process, to consider Stoner's left ulnar neuropathy, right CMC joint arthroplasty and obesity in arriving at his decision.

In that regard, Stoner is critcal of the evaluations performed by Dr. Chrystalla Daly and

Dr.Gary Cromer. Dr. Cromer re-evaluated Stoner at the request of Dr. Daly. Specifically, their

evaluations, which involved review of Stoner's medical records and not a physical examination

of Stoner, are challenged because the ALJ relied upon them in his finding that Stoner's

left ulnar neuropathy was not so serious to render her unable to work.

A review of Dr. Daly's assessment reveals that she found that Stoner had "no further

treatment to show a worsening or change in her condition." Exhibit 9 F, Tr. p. 501. Dr. Cromer,

on September 28, 2010 Exhibit 7F, Tr. p. 496, stated, *inter alia,* that

> CONCLUSIONS: Evidence documents severe medically determinable
> impairments with h/o left shoulder surgery, left ulnar neuropathy at the elbow
> w/o neurologic deficits, s/p right ulnar nerve transposition, and h/o left plantar
> fasciitis. These impairments don't meet or equal any reference listings. Claim-
> ant's other impairments are non-severe as currently documented. Credibility
> is eroded by inconsistencies as previously described. The ESS is noted to be
> symptom-based to a degree not supported by MER or exam findings, and is
> therefore given light weight. Based on the facts summarized above, the RFC
> would be limited as outlined.

The "inconsistencies" to which Dr. Cromer referred in his conclusions center on his

comments in his report that Stoner had been "reportedly not compliant with therapeutic

exercises" following a June 22, 2009 debridement of her left shoulder decompression; and

a notation that while Stoner "has continued to report left shoulder pain", she had not returned

to her orthopaedist since April 16, 2010, "and the absence of ongoing treating source contact

erodes the credibility of claimant's allegations to a degree"; and that while Stoner had been

"diagnosed with left plantar fasciitis in 9/08, but has not returned to her podiatrist with on-going complaints since last seen 11/10/08."

The comments noted above made by Dr. Cromer could certainly be read to support the findings by the ALJ that Stoner's credibility was under scrutiny as to her complaints about the "intensity, persistence, and limiting effects of the symptoms".

This magistrate judge disagrees with Stoner's contentions that the ALJ should not have relied on either Dr. Daly's or Dr. Cromer's opinions because they were arrived at without the ability to review additional records that were later supplied by Stoner's lawyer as part of the record. The argument advanced by claimant is that she was not represented by counsel when those independent evaluations were performed and thus the full record had not been developed.

The record is absent of any motion or request by Stoner to have either or both Dr. Daly or Dr. Cromer review her additional records and prepare an amended evaluation, or an addenda to their earlier evaluations. Likewise, at no time did Stoner object to the consideration of those opinions by Dr. Daly or Dr. Cromer because of the contention that they did not have necessary additional documents prior to the formation of their opinions about her disabilities.

A fair reading of the ALJ's decision, and examination indicates to this magistrate judge that he did in fact properly conduct the necessary review and analysis at Step Two of Sequential Analysis

As noted above, the medical, treatment and evaluation record in this case is quite extensive. A reading of that record reveals additional facts regarding Stoner's claim for disability and the bases upon which the ALJ relied when making his determination to deny her claim.

Representative examples of opinions which support, as a whole, the ALJ's findings include:

A letter report from Robert C. Jones, M.D., dated February 14, 2013, Exhibit 22F, Tr. p. 584-586, and in which Dr. Jones was somewhat equivocal as to his opinions. In concluding his report on Stoner, after stating that it was "permissible for Mrs. Stoner to grip, pinch, and finger with the left hand more than occasionally subject of course to the restrictions associated with the left shoulder", he stated: "This information may be considered in assessing the patient's industrial capacity or lack thereof." What is important to this magistrate judge about Dr. Jones' opinions is the absence of any conclusion that Stoner was physically unable to be employed because of a physical disabilities.

In a Functional Capacity Evaluation (FCE): Summary Report, dated August 25,2009, Exhibit 3F, Tr.p.341-342, Bob Augustine, a physical therapist set forth, his findings which regarding the evaluation of Stoner by noting that the significant abilities she demonstrated included: walking, stair negotiation/stair climbing, right hand carry is significant to left; positional activities that include sitting, standing, trunk flexion, walking; and hand dexterity with right

upper extremity. He outlined her significant deficits to be: material handling either at 2-hand carry waist height, floor-to-waist height, or waist-to-overhead height; sustained overhead work to shoulder level or higher; left upper extremity carry; and weightbearing activities though left shoulder complex (sic).

He then stated in his "Job Description Exploration" that while Stoner was "currently unemployed and does not have a job description at this current testing time", she could "return to work in a sedentary atmosphere".

In a serial report authored by Nicholas J. Honkamp, M.D., Exhibit 5F, Tr. p. 454, he stated in an entry dated July 24, 2009, that according to Stoner's physical therapist, Stoner was noncompliant with her therapy exercises and the therapist wanted to increase therapy to three times per week. On August 11, 2009, Dr. Honkamp stated that he was not sure why Stoner continued to hurt; that her rotator cuff was actually in fairly good shape, and that he felt it was " reasonable to consider a functional capacity exam to see what she can and cannot do and assess some permanent limitations for her work". Nothing was said about Stoner being too disabled to work, or that she could not work.

On September 14, 2010, Robin L. Epp, M.D. issued her written report following her September 7, 2010, examination of Stoner. That examination was requested by the State of Iowa, Disability Determination Section. Exhibit 6 F, Tr. p. 481-486. Dr. Epp noted the following

18.

restrictions for Stoner based upon her examination: lifting, pushing and pulling, floor to waist, 20 pounds occasionally; waist to shoulder, 10 pounds occasionally; and over the shoulder, no lifting, pushing or pulling. No carrying of any weights was recommended. These restrictions applied to material handling. As to nonmaterial handling, Dr. Epp ordered no crawling, standing on uneven surfaces, use of ladders and stairs. She noted that because of Stoner's plantar fasciitis she should rarely stand or walk, or use her lower extremities. She limited upper extremity work, as well as gripping and grasping to rare occasions. She found that Stoner could occasionally kneel. Other general restrictions included no traveling; no use of vibratory or power tools; and no work in warm or cold temperatures.

Dr. Epp also stated that she found no significant impairment as to Stoner that would preclude her from handling cash benefits. Dr. Epp did not state that Stoner was either unable to work or too disabled to work.

In a Psycholgical/Disability Evaluation performed on November 16, 2010, by Richard A. Martin, Ph.D. Exhibit 10 F, Tr. p. 503-506, it was found that Stoner:

> ...appears to possess the cognitive abilities required to work within a wide range of simple unskilled and semiskilled vocational situations... Overall, her concentration/attention and memory abilities appear adequate for most vocational situations....
> Based on her performance on arithmetic and concentration tasks, Ms. Stoner appears capable of independently receiving and handling monthly cash benefits....

Again, another evaluation completed of Stoner, and no psychological opinion that she could not or should not work, or that she had a psychological impairment that rendered her disabled and unable to work.

In the context of the review of these evaluations and opinions by medical, psychological and physical therapy professionals regarding Stoner, it is both interesting and important to point out that Dr. Robert Jones, who authored Exhibit 22F referred to above has, apparently had more first-hand experience in evaluating and examining Stoner than any other medical doctor identified in this record. He references his opinions given about Stoner regarding an evaluation her performed in 2002, for unrelated medical/legal proceedings.

At no time in all his evaluations of Stoner, Dr. Jones has never given the opinion that she was physically disabled and unable to work.

The ALJ's determination of Stoner's residual functional capacity was not erroneous considering the record as a whole in this case. That finding was consistent with 20 CFR 404. 1545 (2013) because it determined the most Stoner could perform despite the effect of all her credible limitations. To be sure she has limitations and restrictions. However, as discussed at length in this report and recommendations, it appears that only Stoner contends that she is unable to work because her physical limitations and impairments.

The Commissioner has the burden of proving Stoner's functional capacity within the five-step test. This was done at step four, in the opinion of this magistrate judge based on all

relevant evidence, and in particular the medical and psychological evaluations and tests, as well as Stoner's own reports and the observations made by the evaluators. Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004). It is important to point out also, as the Commissioner has briefed, that residual functional capacity need only include Stoner's credible limitations. Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006).

A thorough review of the treatment and evaluations records in this case convinces this magistrate judge that the ALJ was correct in finding, on the totality of the record, that Stoner has not been disabled and unable to work since August 13, 2007.

## V. CONCLUSION

The undersigned Magistrate Judge is of the opinion after reviewing the record in this case, the Decision by the Administrative Law Judge Eric S. Basse and the submissions by the parties that the ALJ did in fact properly and appropriately undertake the five-step sequential evaluation process in arriving at his decision. For the reasons stated, and the standard of review the Court must employ, this Magistrate Judge finds that substantial evidence supports the ALJ's conclusion that Sherry Lynn Stoner is not disabled within the meaning of the Act. Accordingly this Magistrate Judge respectfully recommends that the Court affirm the Decision of the ALJ, and that the Clerk of Court be directed to enter judgment for the Defendant and against the Plaintiff.

The parties shall have 30 days from the filing of this Report and Recommendation to file any and all objections, motions or other pleadings directed to this Report and Recommendation in accordance and compliance with the requirements of 28 USC 636(a)(1), and the Local Rules of this Court.

**It is so ordered.**

Dated this 16th day of October, 2014.

_____
THOMAS J. SHIELDS
RECALLED UNITED STATES MAGISTRATE JUDGE